IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JEANETTE "SUE" BARNES,

    Plaintiff,

v.                                                                                                        No. 10-1260

TENNESSEE PERSONAL ASSISTANCE, INC.,

    Defendant.

---

MEMORANDUM OPINION
---

*INTRODUCTION*

       This action was initiated in September 2010 by the Plaintiff, Jeanette "Sue" Barnes, against Defendant Tennessee Personal Assistance, Inc. ("TPA") alleging failure to pay overtime wages in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* (the "FLSA"). The statute provides that

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). An employee covered under the statute who is not compensated in accordance therewith may bring suit to recover overtime pay and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

       The Defendant sought to avoid the statutory requirement pursuant to an exemption for "any employee employed in a bona fide executive, administrative, or professional capacity[.]" 29 U.S.C. § 213(a)(1). In an order entered December 6, 2011, the Court found as a matter of law that the

claimed exemption did not apply to the Plaintiff. (D.E. 47.) Accordingly, the Defendant was liable under the FLSA.

The Court tried the civil action on the issue of damages without a jury commencing on December 20, 2011. Following the trial, the parties submitted post-trial briefs. Rule 52 of the Federal Rules of Civil Procedure requires that, "[i]n an action tried on the facts without a jury . . ., the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). In accordance with the Rule, the Court finds and states the following.

## *FINDINGS OF FACT*[1]

Barnes was employed by TPA, which provides services to disabled individuals in their homes. The company had offices in Memphis and Jackson, Tennessee. Office hours were 8:00 a.m. to 4:30 p.m. Monday through Friday. The Plaintiff held three job titles during her tenure: (1) Team Leader, (2) Program Coordinator and (3) Program Director. Employees who worked in these positions were required to handle a caseload of a certain number of homes, complete paperwork, attend meetings and cover for other workers where necessary. Working the caseload included making home visits in order to ensure things were being handled properly. TPA employees making home visits signed in on a log which contained the date, the visitor's name, the reason for the visit and the time in and out.

According to Defendant's chief executive officer, Sophie Madondo, Barnes was hired on January 20, 2010 and worked as a team leader through February 15, 2010, as a program coordinator from February 16 through May 31, 2010, and as a program director from June 1 to September 16, 2010. Employees were paid a set amount every two weeks for eighty hours' work. Barnes' pay stubs

---

[1]The Court will recite only those facts relevant to its conclusions of law.

reflect that she was paid $420 for forty hours' work as a team leader (or $10.50 per hour), $625 per week as a program coordinator (or $15.63 per hour), and $812.50 per week as a program director (or $20.31 per hour).

The company did not keep records of actual time worked. Instead, employees filled out an attendance register that was essentially a calendar with one of five letters written in the space for each day: P for present for work, A for absent, B for bereavement, V for vacation and S for sick. The form was signed and dated by the employee and the supervisor.

The Plaintiff also kept a personal calendar for the period from March through September 2010 on which she wrote the hours she worked on particular days while it was fresh in her mind.[2] She decided to keep records of her hours because they "kept getting to be more and more and more and more."

TPA employees testified at trial that workers were on call twenty-four hours per day seven days a week. Co-worker Nashanta McKinley related that employees often complained about the long hours when they got together. Fellow workers, Barnes' daughter and a neighbor recalled that she regularly worked from 8:00 a.m. until well into the night and on weekends, in excess of forty hours per week. Neighbor and friend Janette Theriot stated that she made sure the Plaintiff was up and ready to leave for work every morning at 6:00 a.m. and often took dinner to Barnes and another employee as they continued to work in the evening. Theriot also testified that the Plaintiff

---

[2]The Defendant objected to entry of a copy, rather than the original, of the calendar as an exhibit at trial. Rule 1003 of the Federal Rules of Evidence provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. TPA argued that it could not be discerned from the duplicate whether the same color pen had been used to make the entries. At trial, the Court rejected the Defendant's assertion and permitted admission of the duplicate calendar.

sometimes phoned her as she drove home late at night and in the predawn hours, wanting to talk in order to stay awake. On such occasions, which could be several times per week, Barnes would shower and return to work.

Others had different recollections. Co-worker Mercedes Kent remembered that, while she complained frequently, Barnes working very little overtime, perhaps one or two weekends. She acknowledged, however, that the two exchanged emails during evening hours. Midian Young did not recall Barnes coming in early or staying late. However, her testimony revealed that she was often not in the office when the Plaintiff came and went and that she rarely worked weekends. Terry Borkin and Madondo explained that employees were permitted to come in late on days following long work days so that their hours balanced out. Barnes insisted that, in practice, however, employees were not allowed to work a flexible schedule.

Theriot and certain TPA employees were aware that Barnes kept a journal in which she wrote down the hours she worked although they did not see it. The Plaintiff conceded that she sometimes did not make entries because it was too late and she was tired. Although she did not write them down, Barnes claims that during her job as a team leader she worked twenty hours of overtime per week. From the record, it appears that there were three full weeks worked while she was in that position. In total, the Plaintiff recalled working seventy-five hours per week as a program coordinator and sixty per week as a program director. There were weeks, however, when she claimed she worked 100 hours per week. On March 27, 2010, the Plaintiff sent an email to Madondo that read in part: I work very hard from 8 a.m. - till whenever, 7 days a week I am welling [sic] to do what ever it takes to do my job for T.P.A. so please help me figure out how I can possibly do this." (Trial Ex. 4.) According to Madondo, she addressed the issue raised in the email, heard

4

nothing about the matter thereafter, and assumed the problem was resolved.

Assuming she worked seventy-five hours per week as a program coordinator, Barnes had seventy hours of overtime for the last two weeks of February 2010 during which she held that position. Her journal reflected that she worked the following hours[3] from March 1 through April 30, 2010 while employed as a program coordinator:

| | |
|---|---|
| March 1 - 6 | 63 hrs. |
| March 7 - 13 | 93 hrs. |
| March 14 - 20 | 90 hrs. |
| March 21 - 27 | 70 hrs.[4] |
| March 28 - April 3 | 65 hrs. |
| April 4 - 10 | 72 hrs. |
| April 11 - 17 | 66 hrs. |
| April 18 - 24 | 77 hrs. |
| April 25 - April 30 | 60 hrs. |

Thus, for this period, the Plaintiff's claimed overtime hours equal 296. Barnes did not make journal entries for time worked in May, June and July 2010. Again assuming she worked seventy-five hours per week as a program coordinator through May 31, 2010, Barnes would have had approximately 140 hours of overtime for the month of May. Further assuming that she worked sixty hours per week as a program director, the Plaintiff would have accrued approximately 180 overtime hours for the nine weeks of June and July 2010. She recorded the following hours[5] worked from August 1 through September 4, 2010 while she was a program director:

| | |
|---|---|
| August 1 through 7 | 51 hrs. |
| August 8 - 14 | 34 hrs. |
| August 15 - 21 | 42 hrs. |

---

[3]Numbers are rounded to the nearest hour.

[4]The entry for March 22, 2010 reads "7A -." As it cannot discern whether overtime hours were worked on that date, the Court will not assume such was the case.

[5]Again, numbers are rounded to the nearest hour.

    August 22 - 28                                                                 89 hrs.

    August 29 - September 4[6]                                  73 hrs.[7]

For this period, the journal reflects ninety-five hours of overtime.

       Madondo denied that Barnes ever worked overtime except for perhaps five occasions, particularly during audit periods in March and September. She acknowledged, however, that Barnes sent her emails and responded to emails after working hours.

*CONCLUSIONS OF LAW*

       As noted above, an employer who violates § 207 "shall be liable to the employee . . . in the amount of [her] . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

> A plaintiff has the initial burden of showing that [her] employer has violated the FLSA in failing to compensate [her] for overtime work. If the employer does not have sufficient records of the overtime work, an employee has carried out [her] burden if [s]he proves that [s]he has in fact performed work for which [s]he was improperly compensated and if [s]he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

Lewallen v. Scott Cnty., Tenn., 724 F. Supp. 2d 893, 898 (E.D. Tenn. 2010) (citing Herman v. Palo Group Foster Home, Inc., 183 F.3d 468, 472 (6th Cir. 1999)). The Plaintiff's burden "may be

---

[6] The entry for August 29, 2010 reads: "Didn't write down don't remember." The Court will not assume Barnes worked overtime on that date. In her post-trial memorandum, the Plaintiff does not appear to seek damages for work performed after September 4, 2010.

[7] The entry for August 31, 2010 reads "8 a.m. -." As it cannot discern whether overtime hours were worked on that date, the Court will not assume such was the case.

satisfied by the sole testimony of the complaining employee based on her recollection alone." England v. Advance Stores Co. Inc., 263 F.R.D. 423, 448 (W.D. Ky. 2009).

TPA has proffered to the Court no records of any overtime work performed by the Plaintiff. Based on the trial testimony and Barnes' calendar, the Court concludes that Plaintiff has provided sufficient evidence to satisfy her burden of demonstrating that she worked approximately 841 hours of overtime.

As noted above, the burden at this point shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. Madondo had no documentation to prove Barnes' estimate of her overtime was inaccurate, except to state that she would have known if the Plaintiff were working that much. Madondo acknowledged, however, that she did not monitor employees' work hours.

The Defendant also questioned the accuracy of the Plaintiff's calendar, pointing out that, on March 7, 2010, there were two entries by Barnes on the visitor's log totaling sixty-three minutes. On her calendar, the Plaintiff noted that she worked three hours that day. Madondo further indicated that the two calendar entries indicating Saturday work while Barnes was a program director revealed that it was a fake because there was nothing for an employee in that position to do on a Saturday. Barnes explained the claimed discrepancy and anomaly by stating that on weekends she did filing and caught up on incomplete work.

Upon review of the evidence, the Court finds that TPA has failed to bear its burden. Thus, the Court must now determine the amount of unpaid overtime compensation due the Plaintiff. The overtime hourly rates for Barnes as team leader, program coordinator and program director are

$15.75, $23.45 and $30.47 per hour, respectively. Accordingly, the Court hereby finds that Plaintiff's unpaid overtime compensation amounts to $21,189.95.

Liquidated damages are "compensation, not a penalty or punishment." Elwell v. Univ. Hosps. Home Care Servs., 276 F.3d 832, 840 (6th Cir. 2002). "Rather, they are considered the norm and have even been referred to by [the Sixth Circuit] as mandatory." Solis v. Min Fang Yang, 345 F. App'x 35, 38 (6th Cir. 2009) (internal quotation marks omitted). Nonetheless, the FLSA provides that "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of [the statute], the court may, in its sound discretion, award no liquidated damages . . ." 29 U.S.C. § 260. "This burden on the employer is substantial and requires proof that the employer's failure to obey the statute was *both* in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon it more than a compensatory verdict." Elwell, 276 F.3d at 840 (internal quotation marks omitted). "[A] failure to comply with [the statutory provisions] must be based on objectively reasonable grounds." Solis, 345 F. App'x at 39. "To prove that it acted in good faith, an employer must show that it took affirmative steps to ascertain the [FLSA]'s requirements, but nonetheless violated its provisions." Martin v. Ind. Mich. Power Co., 381 F.3d 574, 584 (6th Cir. 2004) (internal quotation marks omitted). "Good faith means more than merely not willfully misclassifying the employee." Id. (internal quotation marks omitted). "The employer has an affirmative duty to ascertain and meet the FLSA's requirements, and an employer who negligently misclassifies an employee as exempt is not acting in good faith." Id. "[I]n the absence of such proof, a district court has no power or discretion to reduce an employer's liability for the equivalent of double unpaid wages." Solis, 345 F. App'x at 39.

Here, the Defendant has made no effort whatsoever to establish that it acted in good faith and that it had reasonable grounds for believing its treatment of Barnes as an exempt employee was not a violation of the FLSA. As it is not the responsibility of the Court, particularly at this stage of the litigation, to formulate TPA's argument for it, the Court declines to exercise its discretion on the Defendant's behalf. Accordingly, the Plaintiff is awarded liquidated damages in the amount of $21,189.95.

For the reasons articulated herein, the Clerk of Court is DIRECTED to enter judgment for the Plaintiff in the amount of $42,379.90.

IT IS SO ORDERED this 18th day of June 2012.

                                            s/ J. DANIEL BREEN
                                            UNITED STATES DISTRICT JUDGE